UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

ANDREW COOPERRIDER, *et al.*,

Plaintiffs,

v.

ANDREW BESHEAR, *et al.*,

Defendants.

Case No. 3:22-cv-00016-GFVT

**MEMORANDUM OPINION**
**&**
**ORDER**

*** *** *** ***

This matter is before the Court on motions to dismiss filed by Defendants Governor Andrew Beshear, Secretary Ray Perry, Wesley Duke, and Joshua Newton. [R. 7; R. 8; R. 9; R. 23.] Plaintiffs Andrew Cooperrider and Brewed, which Mr. Cooperrider owns, began criticizing Governor Beshear online. Two years later, the Department of Alcoholic Beverage Control revoked Brewed's alcohol license. The Plaintiffs contend that the license revocation was retaliation for their criticism and done without due process of law. The Defendants assert immunity from suit and argue that the Plaintiffs fail to bring a cognizable claim. For the following reasons, the Defendants' motions to dismiss [R. 7; R. 8; R. 9; R. 23] are **GRANTED**.

**I**

Mr. Cooperrider is a Kentucky resident and the sole member of Brewed, a coffee shop that also served alcohol. [R. 1 at 2-3.] Starting in March 2020, the Plaintiffs began making critical posts about Governor Beshear on social media. *Id.* at 4. By November 2020, the Plaintiffs had created a series of posts critical of Governor Beshear's executive orders relating to COVID-19. *Id.* Governor Beshear had issued executive orders that required masks to be worn

indoors and prohibited indoor dining. *Id.* at 4-5. The complaint alleges that Governor Beshear knew about the Plaintiffs comments and has directly referenced the criticism, often expressing anger at the criticism. *Id.* at 4. Mr. Cooperrider later supported an impeachment effort of Governor Beshear. *Id.* at 5. In November 2020, the Department of Alcoholic Beverage Control initiated an enforcement action against Brewed. *Id.* The enforcement began with an emergency order suspending Brewed's alcohol license and rested on two grounds: violation of Governor Beshear's executive orders relating to COVID and disorderly conduct under KRS 244.120. *Id.* at 5; [R. 23-3 at 1-2.]

Responding to Governor Beshear's executive orders, the state legislature passed several new laws. One piece of legislation ended Governor Beshear's executive orders relating to COVID, and another provides that businesses may remain open so long as the business adopts an acceptable operating plan. [R. 1 at 5-6.] In a budget bill, the legislature instructs that no state funds or state employee time valued over $10,000 shall be expended to implement or enforce any unauthorized executive order. *Id.* at 7. The budget bill also requires future executive orders to provide a report to the legislature about their effects. *Id.*

In May 2021, the Department of Alcoholic Beverage Control held a hearing regarding Brewed's enforcement action. *Id.* at 8. The complaint asserts that afterward, Governor Beshear, Secretary Perry, and Mr. Duke refused to offer the Plaintiffs an opportunity to settle the matter, although the ABC settled other similar enforcement actions. *Id.* Then, in March 2022, the Department held a final revocation hearing for Brewed's alcohol license. *Id.* at 9. The complaint alleges that there, the Defendants directed the ABC to revoke Brewed's alcohol license, contrary to the hearing officer's recommendation. *Id.*

Mr. Cooperrider and Brewed bring this action against Governor Beshear, Public

Protection Cabinet Secretary Perry, ABC Commissioner Taylor, ABC Administrator Woods, ABC General Counsel Newton, and Cabinet for Health and Family Services General Counsel Duke. *Id.* at 3. The Plaintiffs bring claims against the Defendants in their individual and official capacities for violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment. [1] *Id.* at 9-11. They allege that, by continuing the enforcement action after the legislature ended or restricted enforcement for executive orders, the Defendants retaliated against the Plaintiffs' criticism of Governor Beshear and deprived them of the alcohol license without due process of law. *Id.* Governor Beshear, Secretary Perry, Mr. Newton, and Mr. Duke move to dismiss these claims. [2] [R. 7; R. 8; R. 9; R. 23.]

## II

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. A motion to dismiss under Rule 12(b)(1) challenges the Court's power to hear the case before it. When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court

[1] The Plaintiffs originally pleaded official capacity claims against Mr. Duke but later "agree[d] he is entitled to official capacity immunity" and thus withdrew "those official capacity claims against only him." [R. 17 at 14.]

[2] The Plaintiffs requested oral argument on the motions to dismiss pursuant to the local rules. *See* L.R. 7.1(f) (providing that a party may request oral argument "in a motion, response, or reply"). The decision to grant or deny the party's request is discretionary. Here, the Court finds that oral argument would not assist the Court in resolving this matter and denies the Plaintiffs' request. *See Moturi v. Asher*, 2020 U.S. Dist. LEXIS 76512, 2020 WL 2084915, at *1 n.2 (W.D. Wash. April 30, 2020) (denying petitioners request for oral argument because the parties "thoroughly briefed the issues and oral argument would not be of assistance to the Court").

"need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

**A**

The Defendants contend that their roles as government officials afford them immunity from suit. [*See, e.g.*, R. 8-1 at 5.] The Eleventh Amendment generally protects government officials from suit in their official capacities. In addition, absolute or qualified immunity can protect officials from suit in their individual capacities.

**1**

The Defendants contend the Court has no subject matter jurisdiction over the Plaintiffs' official capacity claims because they enjoy sovereign immunity under the Eleventh Amendment. [*See, e.g.*, R. 8-1 at 15.] Generally, the Eleventh Amendment bars suits against states and state agencies in federal court unless a state legislature has waived immunity or has consented to being sued in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). The Eleventh Amendment protects states against all types of claims, "whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).

Three exceptions to Eleventh Amendment immunity exist. First, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers. *See Alden v. Maine*, 527 U.S. 706, 756 (1999). Second, a state may waive its immunity. *See Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011). Third, under *Ex Parte Young*, officials who are violating or threatening to violate the Constitution "may be enjoined by a Federal court of equity from such action." 209 U.S. 123, 155-56 (1908). To trigger the *Ex Parte Young* exception, two conditions must be met. First, the plaintiff's action must seek prospective relief that ends a continuing violation of federal law. *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002). Second, the state officials must have "some connection" to that ongoing violation. *Ex parte Young*, 209 U.S. at 157-59. The inquiry focuses on the allegations only; it "does not include an analysis of the merits of the claim." *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 646 (2002).

**a**

Claims brought under *Ex Parte Young* can provide only prospective relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). A court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc.*, 535 U.S. at 645. Courts "look to the substance of the legal claim, not its formal description." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008). "Declaratory relief is not prospective as required by the *Ex Parte Young* doctrine when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 744 (W.D. Tenn. 2012); *Derezic v. Ohio Dep't of Educ.*, No. 2:14-cv-51, 2014 U.S. Dist. LEXIS 118163, 2014 WL 4206580, at *5 (S.D. Ohio Aug. 25, 2014) ("[P]rospective relief aims to directly bring an end to a present violation of federal law by

dictating an official's future conduct.").

A court must determine whether the alleged violation is truly ongoing or merely "designed to remedy past violations of federal law." *Coeur d'Alene Tribe*, 521 U.S. at 288 (O'Connor, J., concurring in part and concurring in the judgment); *see also Papasan v. Allain*, 478 U.S. 265, 277-78 (1986) (distinguishing cases where a violation is ongoing from those "in which federal law has been violated at one time or over a period of time in the past"). In essence, the exception created by *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

The Defendants argue that the claims do not request prospective relief. [*See, e.g.*, R. 23 at 15.] Indeed, the Plaintiffs' First Amendment and procedural Due Process claims do not allege an "ongoing violation of federal law" or seek "relief properly characterized as prospective." *Verizon Md. Inc.*, 535 U.S. at 645. The Plaintiffs plainly contend that the alleged violations "continue[] to the present." [R. 1 at 10-11.] The source of the claims is that the Defendants "continued enforcement action against Plaintiffs after the General Assembly changed the law." [*See* R. 24 at 11.] But the enforcement action is complete and Brewed's alcohol license is revoked. [R. 1 at 9.] Therefore, the Plaintiffs do not allege an ongoing violation of the First Amendment or procedural Due Process. *See, e.g.*, *Autry v. Johnson*, No. 3:04CV-587-H, 2005 U.S. Dist. LEXIS 15616, at *5 (W.D. Ky. July 29, 2005) (holding that a "discrete act of First Amendment retaliation does not allege an ongoing violation"); *Mich. Interlock, LLC v. Alcohol Detection Sys.*, LLC, 360 F. Supp. 3d 671, 677-78 (E.D. Mich. 2018) (finding no ongoing violation of federal law after the plaintiffs "were deprived of their [Due Process] rights" but the plaintiffs do not allege "future procedural due process violations").

However, the Plaintiffs' substantive Due Process claim alleges an ongoing violation. A violation of substantive Due Process is ongoing when officials "unconstitutionally retain possession of a person's identifiable property." *Mikel v. Quin*, 58 F.4th 252, 257 (6th Cir. 2023) (finding an ongoing violation where the plaintiff's foster children "remain[ed] outside Mikel's custody"). Here, the Plaintiffs seek an injunction to prevent "further unconstitutional" deprivation of their license. [R. 1 at 12.] Thus, the Plaintiffs' substantive Due Process claim sufficiently "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" because Brewed continues to be deprived of its license. *Verizon Md. Inc.*, 535 U.S. at 645; *see also Mich. Interlock, LLC*, 360 F. Supp. 3d at 678 (finding an ongoing violation "for as long as [plaintiffs] are left off the list" of approved manufacturers because they alleged "a property interest in being on the list"); *S&M Brands, Inc.*, 527 F.3d at 508 (finding no ongoing violation where the plaintiff had no ownership interest in the withheld property). Because the Plaintiffs do not allege a future or ongoing violation of their First Amendment or procedural due process rights, these claims are dismissed against the Defendants in their official capacities.

**b**

Defendants Governor Beshear and Secretary Perry also argue that the Court should dismiss the claims against them in their official capacities because Governor Beshear and Secretary Perry are not connected to the alleged violations. An official must "have some connection with the enforcement" that is challenged. *Ex parte Young*, 209 U.S. at 157. Proper defendants to an *Ex Parte Young* claim include "officials who have direct responsibility in the area in which the plaintiff seeks relief." *Bartlett v. Wengler*, No. 1:12-CV-00312-EJL, 2014 U.S. Dist. LEXIS 135516, 2014 WL 4773959, at *5 (D. Idaho Sept. 24, 2014). Officials have direct responsibility when they are "actively involved with administering" the relevant laws. *Doe v.*

*Dewine*, 910 F.3d 842, 849 (6th Cir. 2018) (finding sufficient connection where the defendants promulgated regulations implementing the sex-offender registration requirements, operated the state-wide sex-offender database, and structured community notifications that alert citizens to the proximity of registered offenders); *ABC v. Blackwell*, 479 F. Supp. 2d 719, 729 (S.D. Ohio 2006) (finding sufficient connection where the defendant, as secretary of state, "controll[ed] the election process via the boards of election through the issuance of rules, directives and advisories, as well as his authority to appoint the board members."). Yet a plaintiff cannot pursue a claim against the governor based on a theory that, "in a general sense, [he] is charged with the execution of all" the state's laws because then the constitutionality of every act passed by the legislature or initiated by an agency "could be tested by a suit against the governor." *Ex parte Young*, 209 U.S. at 157.

Governor Beshear argues that he is immune from official-capacity claims because his "role as the supreme executive does not make him subject to suit for actions stemming from an ABC enforcement proceeding." [R. 8-1 at 16.] Certainly, his role alone does not create a connection to the alleged violation. *See Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("General authority to enforce the laws of the state is not sufficient."). But the Plaintiffs allege that Governor Beshear personally directed the enforcement against Brewed. [R. 1 at 8-9.] The Court does not analyze the merits of this allegation. *See Verizon Md. Inc.*, 535 U.S. at 646. Thus, the Plaintiffs allege that Governor Beshear was "actively involved" with the enforcement action. *Dewine*, 910 F.3d at 849.

Secretary Perry argues that the Plaintiffs fail to allege a connection because state law allows a secretary to delegate duties to commissioners who directly oversee enforcement. [R. 20 at 6.] Even still, Secretary Perry prescribes the duties of the commissioners and directly oversees

them. *See* KRS 12.252(1). And the Plaintiffs assert that Secretary Perry directed the enforcement against Brewed. [R. 1 at 8-9.] Thus, the Plaintiffs also allege that Secretary Perry is at least "actively involved" with the enforcement. *See Dewine*, 910 F.3d at 849.

**c**

The Plaintiffs' claims for declaratory or injunctive relief against the individual-capacity defendants are indistinguishable and will be treated the same as the Plaintiffs' official-capacity claims seeking the same relief. The Plaintiffs appear to seek declaratory and injunctive relief against the Defendants in their individual capacities. [R. 1 at 12; R. 24 at 7.] However, a plaintiff cannot "sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job. *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 F. App'x 389, 401 (6th Cir. 2005). A plaintiff effectively seeks an injunction against a defendant in their official capacity, even when styled as individual-capacity relief, when the injunction "would only be useful" to the plaintiff if the injunction transferred to the defendants' successors. *Id.*

Here, the Plaintiffs' individual-capacity claims seeking declaratory or injunctive relief cannot be distinguished from their official-capacity claims. Though the Plaintiffs fail to specify the equitable relief sought, they appear to request a declaration that the Defendants are unlawfully depriving Brewed of its alcohol license and an injunction restoring the license. [R. 1 at 12 (requesting "a declaration that the practices complained of herein, by Defendants were and are unconstitutional" and "an injunction enjoining further unconstitutional actions."). Because the equitable relief sought relates only to the Defendants' government responsibilities for alcohol licensing and an injunction would only be useful if applied to the Defendants' successors, the individual claims seeking equitable relief are indistinguishable from the official-capacity claims.

*See Cmty. Mental Health Servs.*, 150 F. App'x at 401. Therefore, the Plaintiffs' claims against the Defendants remain only to the extent that they are for monetary relief against the Defendants in their individual capacities or for prospective equitable relief for the Plaintiffs' substantive due process claim.

**2**

The Defendants also argue that immunity protects them from claims seeking monetary relief from the Defendants in their individual capacities. Government officials sued in their individual capacities may hold absolute or qualified immunity from a claim for monetary relief.

**a**

Defendant Joshua Newton argues that he is entitled to absolute immunity. Absolute immunity shields a prosecutor from individual damages when he acted within the scope of his prosecutorial duties. *See Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). The protection arises in part from a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423. Absolute immunity extends to conduct in civil proceedings where "a government attorney is operating in an enforcement role" in initiating proceedings. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). Indeed, the "decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Butz v. Economou*, 438 U.S. 478, 515 (1978). Thus, "officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity." *Id.* at 516.

In determining whether an official is entitled to prosecutorial immunity, courts use a

functional approach that looks at the "nature of the function performed, not the identity of the actor who performed it." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The functional approach asks whether the conduct was "undertaken in connection with one's duties in functioning as a prosecutor." *Skinner*, 463 F.3d at 525 (brackets and internal quotation marks omitted). When performing functions that are "intimately associated" with an adjudicative process, prosecutors are absolutely immune from civil suits. *Imbler*, 424 U.S. at 430. On the other hand, investigative or administrative functions garner only qualified immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991). Determining whether to initiate a proceeding against a defendant is "the quintessential prosecutorial function." *Bowman v. Warren Cnty. Reg'l Jail*, No. 95-6241, 1996 U.S. App. LEXIS 16667, at *3 (6th Cir. June 20, 1996). Whether the official had an improper motive, acted in bad faith, or acted illegally is irrelevant. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009).

The Plaintiffs allege that Defendant Joshua Newton, as general counsel for the Kentucky Department of Alcoholic Beverage Control, violated their First and Fourteenth Amendment rights by deciding to continue "enforcement against Brewed, including the revocation of its alcohol license" and ultimately "tak[ing] final action . . . to revoke Brewed's alcohol license." [R. 1 at 9.] Similarly, the Plaintiffs complain of Mr. Newton's "failure to discontinue the[] enforcement proceedings against Plaintiffs," which was "in plain contravention of state law." *Id.* at 10. Consequently, because the Plaintiffs allege that Mr. Newton was "responsible for the decision to initiate or continue" enforcement proceedings against Brewed, he is entitled to absolute immunity. *Butz*, 438 U.S. at 516; *see also Coordinated Estate Servs. v. Walding*, No. 3:08-cv-0138-JAJ, 2009 U.S. Dist. LEXIS 31324, at *9-10 (S.D. Iowa Apr. 7, 2009) (holding that an official held absolute immunity where the plaintiff alleged that the official decided "to

continue administrative agency proceedings" to suspend or revoke the plaintiff's liquor license "after receiving information that those actions were [illegal]"). Whether Mr. Newton acted with bad faith or outside the law is irrelevant. *See Cady*, 574 F.3d at 341. Therefore, the Plaintiffs' claims against Mr. Newton in his individual capacity for monetary damages are dismissed. *See Imbler*, 424 U.S. at 420.

**b**

All moving Defendants also assert qualified immunity from individual-capacity claims seeking monetary relief. [*See, e.g.*, R. 8-1 at 17.] Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A court asks two questions to determine whether an official is entitled to qualified immunity: (1) "Taken in the light most favorable to the party asserting injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) was the right "clearly established . . . in light of the specific context of the case?" *Crosby*, 863 F.3d at 552 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may address either prong first, and a plaintiff must satisfy both prongs to demonstrate that the defendant is not entitled to qualified immunity. *See Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) ("A plaintiff must satisfy both inquiries in order to defeat the assertion of qualified immunity."). Finally, once a defendant raises the qualified immunity defense, "the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right .'" *Thomas v. Plummer*,

489 F. App'x 116, 119 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, as described below, the Plaintiffs fail to allege that the Defendants' conduct violated the Plaintiffs' First or Fourteenth Amendment rights. Consequently, the Defendants are entitled to qualified immunity from suit for monetary damages in their individual capacities.

**B**

**1**

The Defendants argue that the Plaintiffs have not alleged a First Amendment retaliation claim. The Defendants contend that the complaint includes conclusory allegations that the Court should not consider, and without these allegations, the complaint does not plead a plausible First Amendment claim. [*See, e.g.*, R. 8-1 at 8.] Courts assess the sufficiency of a complaint with a two-step approach. *See Iqbal*, 556 U.S. 662. First, the court should identify and disregard conclusory allegations, which are "not entitled to the assumption of truth." *Id.* at 664. Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*

**a**

The Defendants argue that the Plaintiffs' complaint includes conclusory allegations that the Court should reject. The Plaintiffs contend that the allegations are by design: "[r]ather than attaching dozens of emails to the complaint, [the Plaintiffs] plead what the facts show generally." [R. 19 at 7.] The Court strains to find a better definition of a conclusory allegation. *See Conclusory*, Black's Law Dictionary (11th ed. 2019) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based").

Therefore, the Court will disregard two types of allegations that the Plaintiffs provide.

First, the Plaintiffs allege that the Defendants were "angered by[] the social media

activity of the Plaintiffs." [R. 1 at 4.] Unsupported statements about a defendant's mental state are not entitled to an assumption of truth. *See Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021) (disregarding unsupported allegations of the defendant's knowledge). Here, the Plaintiffs allege no facts supporting the conclusion that Defendants Duke, Perry, and Newton were angered by the Plaintiffs' social media activity. The Plaintiffs offer facts only regarding Governor Beshear. [R. 1 at 4 (alleging that Governor Beshear expressed anger in public statements).] Therefore, the Court will disregard the allegation that Defendants Duke, Perry, and Newton were angered by the Plaintiffs' social media activity. *See, e.g.*, *Hyberg v. Enslow*, Civil Action No. 18-cv-00014-RM-NRN, 2019 U.S. Dist. LEXIS 32230, at *27 (D. Colo. Feb. 28, 2019), *aff'd*, 801 F. App'x 647 (10th Cir. 2020) (holding that an allegation that the defendant was upset about the cost of rebuilding was "conclusory and devoid of 'sufficient factual matter . . . to state a claim.'") (quoting *Iqbal*, 556 U.S. at 678)); *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 73 (1st Cir. 2015) (finding that a claim that the Defendant became angry was conclusory because the plaintiff "does not tell us the basis for this impression, and does not recount specific words or any particular behavior that would indicate anger").

Second, the complaint includes several statements alleging that the Defendants' conduct was designed to retaliate against the Plaintiffs for their speech. [R. 1 at 8-9 ("[T]he Defendants desired to punish Brewed and Cooperrider for their First Amendment protected speech. . . . [Revoking Brewed's license] was done in a vindictive and retaliatory manner . . . [and] taken primarily to punish Brewed and Cooperrider for their First Amendment protected speech. . . . [T]he adverse action was motivated at least in part by the plaintiff's protected conduct."). Like the allegations in *Iqbal*, these bare assertions "amount to nothing more than a 'formulaic recitation of the elements'" of a First Amendment retaliation claim: namely, that the Defendants'

conduct was a reaction to speech protected by the First Amendment. *Iqbal*, 556 U.S. at 680-81 (disregarding allegations that the petitioners subjected the respondent to harsh conditions "as a matter of policy, solely on account of his religion, race, and/or national origin"). The Court does not reject these allegations because they are unrealistic. Rather, it is "the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.* at 681.

**b**

The Court then considers the remaining factual allegations to determine if they plausibly suggest a First Amendment retaliation claim. *See Iqbal*, 556 U.S. at 664. A plaintiff must establish three elements for a retaliation claim: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (citations omitted). The Plaintiffs contend that they engaged in protected conduct by criticizing Governor Beshear. [*See* R. 1 at 4.] This the Defendants do not dispute. The Plaintiffs argue that the Defendants retaliated against the Plaintiffs' criticism, not by initiating an action to revoke Brewed's alcohol license, but by continuing an existing enforcement action.[3] *Id.* at 9. The

[3] The complaint suggests that the Defendants retaliated in ways in addition to continuing the enforcement action: "Defendants have taken other actions designed to deter persons of ordinary firmness from engaging in protected speech, including the issuance of public and other statements excoriating the Plaintiffs." [R. 1 at 9.] The Plaintiffs do not elaborate. But to the extent that Plaintiffs intend this to provide another ground for relief, this allegation fails to state a claim. First, "criticisms, accusations, threats, or bad mouthing are not enough." *Mills v. Williams*, 476 F. Supp. 2d 653, 662 (E.D. Mich. 2007) (quotation omitted). Second, the allegation appears to refer to paragraph 20 of the complaint, which alleges that Governor Beshear made public statements about Defendants and suggests that he did so in the year 2020. [R. 1 at 4.] A claim on this basis would be barred by the statute of limitations. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (concluding that Section 1983 actions in Kentucky are limited by a one-year statute of limitations). Third, without explaining what the "other actions" were, when the actions took place, or by whom, this allegation simply does not "provide fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Defendants argue that continuing an existing action cannot constitute an adverse action, but even if so, the Plaintiffs make no plausible claim that the continuation was motivated by the Plaintiffs' criticism of Governor Beshear. [*See id.* at 9-10.]

An adverse action is one that would "chill or silence a person of ordinary firmness from future First Amendment activities." *Harper v. City of Cleveland*, 781 F. App'x 389, 396 (6th Cir. 2019). The Plaintiffs contend that the Defendants took adverse action by continuing the enforcement action against Brewed after "the legislature made the continuation of the enforcement [of the executive order] illegal." [R. 1 at 9; R. 19 at 11.] However, "[i]t seems illogical to suggest that the continuation of [an action] that was already under way could possibly be retaliatory." *Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020). And even if the change in state law abrogated the Defendants' authority to enforce the executive order, the Department of Alcoholic Beverage Control had an independent basis to revoke Brewed's license. [*See* R. 23-3 at 1-2; R. 23-4 at 1-2.] Therefore, the Defendants had no obligation to discontinue enforcement proceedings. Accordingly, the Plaintiffs fail to plausibly allege that the Defendants took adverse action against them.

Even if the continued enforcement constitutes an adverse action, the Plaintiffs fail to show that their speech caused the action. The Plaintiffs must demonstrate that "the speech at issue represented a substantial or motivating factor in the adverse" action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). To do this, the Plaintiffs must "point to specific, nonconclusory allegations" linking the speech to the enforcement. *Id.* A motivating factor is "essentially a but-for cause," requiring the Plaintiff to show that without the speech, the action "simply would not have been taken." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation omitted). The plaintiff has the original burden of establishing that the protected conduct was a

motivating factor behind any harm. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011). Then, the burden shifts to the defendant to show that he would have taken the same action in the absence of the protected activity. *Id.*

A brief interval between the protected speech and the adverse action suggests a causal connection. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). However, "temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't*, 474 F.3d 307, 321 (6th Cir. 2007) (citing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363-64 (6th Cir. 2001) and *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). Temporal proximity, considered with other evidence, may establish a causal connection. *See id.* But the "more time that elapses between the protected activity" and the adverse action, the more the plaintiff must supplement his claim with other evidence. *Vereecke*, 609 F.3d at 400. Here, the Plaintiffs argue that a causal connection is established by the complaint's allegation of causation, time proximity, and the Defendants' alleged statements acknowledging Plaintiffs' criticism. [*See* R. 24 at 14-15.] Yet as discussed above, the complaint's allegation that the speech caused the continuing enforcement action is conclusory and must be disregarded. *See Iqbal*, 556 U.S. at 664.

In addition, the long duration between the Plaintiffs' speech and the Defendants' actions is a weak indicator, if any, of causation. The Plaintiffs allege that they began criticizing Governor Beshear in March 2020, "engaged in a series of highly critical posts" in November 2020, continued to make critical posts, and supported the impeachment of Governor Beshear in late 2020. [R. 1 at 4-5.] The Plaintiffs then allege that the Defendants "persisted with" the enforcement on May 21 2021, "directed that no[] settlement be offered" in late summer of 2021, and finally revoked the license on March 4, 2022. *Id.* at 8-9. Thus, the first adverse action

complained of occurred more than five months after the Plaintiffs supported Governor Beshear's impeachment. On the other end, the license revocation occurred two years after the Plaintiffs began criticizing Governor Beshear. This five-month to two-year duration between the speech and action is insufficient to plausibly allege causation. *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (finding that temporal proximity of "two to five months" between protected conduct and adverse action is insufficient); *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022) (finding that a three-month proximity was "a firm indicator of a lack of a causal link").

The Plaintiffs also allege that the Defendants "were each aware of" and acknowledged the Plaintiffs' criticism of Governor Beshear and that Governor Beshear's referenced the criticism "in a manner that expresse[d] his anger." *Id.* at 4; [R. 17-1.] However, allegations of knowledge and disapproval, coupled with a weak temporal link, do not satisfy the causation element. *See Boshaw*, 32 F.4th at 605-06 (holding that three months between the speech and adverse action, coupled with allegations that the defendant "expressed anger toward him" after learning about the speech and became more scrutinizing of the plaintiff were insufficient to show causation). Moreover, causation is further lessened because the enforcement action was already existing. *See Yablonsky v. Cal. Dep't of Corr. & Rehab.*, No. 18-cv-1122-AGS, 2022 U.S. Dist. LEXIS 180054, at *17 (S.D. Cal. Sep. 30, 2022) (holding that conduct cannot be said to cause an action to continue "in the same manner as before").

Simply put, the Plaintiffs allege that they spoke critically about Governor Beshear and the Defendants knew about and acknowledged the criticism. Then, months later, the Defendants continued an existing action. This fails to establish that the protected conduct was a motivating factor behind any adverse action. *See Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 371. Yet

even if the Plaintiffs sufficiently alleged that the criticism caused the enforcement to continue, the burden shifts to the Defendants to show that "would have taken the same action in the absence" of the speech. *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 371. Here, the Defendants showed that they possessed multiple, independent bases to revoke Brewed's license. [*See* R. 23-3 at 1-2 (noting that the second violation "is independent of the first and does not rely on the Governor's Executive Orders"); R. 23-4 at 1-2.] Where a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Thus, the Plaintiffs fail to plead a plausible First Amendment retaliation claim.

**2**

The Plaintiffs also allege that the Defendants violated the Plaintiffs' due process rights by failing "to discontinue their enforcement proceedings against Plaintiffs" after state law prohibited the enforcement. *Id.* at [R. 1 at 10-11.] The Fourteenth Amendment provides that states may not deprive any person of life, liberty, or property without due process of law.

**a**

To establish a procedural due process claim, a plaintiff must show that the state did not afford him adequate procedural rights before depriving him of a protected interest. *See Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). The Plaintiffs argue that the Defendants' "failure to discontinue their enforcement proceedings against Plaintiffs" violated their procedural due process rights because state law "foreclosed any of the actions taken by Defendants after August, 2021." [R. 1 at 10-11; R. 18 at 15.] Yet procedural due process, "unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply

requires that the government provide 'due process' before making such a decision." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Procedural due process concerns only "whether the process accorded prior to the deprivation was constitutionally sufficient." *Id.* at 1349-50. Adequate procedure requires an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Here, the Plaintiffs do not dispute that they received notice and an opportunity to be heard. They recognize that they received a hearing before the alcohol license was revoked, and they do not dispute that they had the opportunity to—and did—appeal the revocation in state court. [*See* R. 1 at 8; R. 18 at 17-18.] Therefore, the Plaintiffs do not allege a plausible procedural due process violation. *See, e.g.*, *Ware v. Curley*, 934 F. Supp. 259, 264 (E.D. Mich. 1996) (finding that the plaintiff brought a substantive, not procedural, claim where he alleged the "actions themselves were impermissible, regardless of the process accompanying their actions"); *Burns v. Copeland*, No. 3:10cv464-MHT (WO), 2011 U.S. Dist. LEXIS 35149, at *10 (M.D. Ala. Mar. 31, 2011) (Too much process (at least as alleged by Burns) does not create a [procedural] due-process violation.

The Plaintiffs also assert a procedural due process violation because "the Governor's personal animus permeated the end decision." [R. 19 at 16.] But the Plaintiffs fail to support their position with any applicable law. *Williams v. Pennsylvania*, cited by the Plaintiffs, decided when the "likelihood of bias on the part of the judge is too high to be constitutionally tolerable." 579 U.S. 1, 8 (2016) (citing *In re Murchison*, 349 U. S. 133, 136 (1955)) ("Due process guarantees "an absence of actual bias" on the part of a judge.") This protection does not extend to all aspects of an enforcement action; the procedural due process analysis for bias "focuses on the decision-maker, not the investigator." *Herman v. Ohio Univ.*, No. 2:19-cv-201, 2019 U.S.

Dist. LEXIS 203111, at *20 (S.D. Ohio Nov. 22, 2019) (citing *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586-87 (6th Cir. 2013). Here, the Plaintiffs admit that "Defendant Beshear is not an adjudicatory official." [R. 18 at 24.] Nevertheless, only "the most extreme of cases" raise due process concerns. *Cicchini v. Blackwell*, 127 F. App'x 187, 191 (6th Cir. 2005) (citations omitted). The Plaintiffs' nonconclusory allegations assert only that the Defendants continued an enforcement against the hearing officer's recommendation and without offering the Plaintiffs an opportunity to settle. [R. 1 at 8-9.] These allegations fail to plausibly show how Governor Beshear held bias against the Plaintiffs or how his bias "permeated" the proceedings to cause a procedural due process violation. *See Williams*, 579 U.S. at 8; [R. 19 at 16.]

**b**

The Plaintiffs also allege that the Defendants' "failure to discontinue their enforcement proceedings against Plaintiffs" violated their substantive due process rights. [R. 1 at 10-11.] Under substantive due process, "deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). Substantive due process protects the right to be free from "arbitrary and capricious" deprivations by government actors. *Id.* (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)); *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) ("[S]ubstantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.").

Where a plaintiff challenges a state administrative action under substantive due process, the "scope of review by the federal courts is extremely narrow." *MSI Regency, Ltd. v. Jackson*, 433 F. App'x 420, 429 (6th Cir. 2011). To prevail, a plaintiff must show that the administrative action was arbitrary and capricious "in the strict sense, meaning that there is no rational basis for

the" administrative decision. *Id.* The standard is "highly deferential;" only "the most egregious official conduct" violates substantive due process." *Id.*; *Lewis*, 523 U.S. at 846. If any conceivable legitimate governmental interest supports the contested ordinance, that measure is not arbitrary and capricious and cannot violate substantive due process. *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 620 (6th Cir. 1997).

Here, the Plaintiffs argue that the Defendants had no rational basis for continuing the enforcement against Brewed because the Kentucky legislature passed a law that prohibited agencies from enforcing executive orders related to COVID restrictions. [R. 1 at 7; R. 24 at 5.] True, the violation of executive orders served as one basis for the enforcement action. [R. 1 at 5.] But even if the change in state law abrogated this ground for enforcement, the enforcement rested on other, independent grounds. The enforcement action was also based on KRS 244.120, which prohibits a licensed establishment from "acts constituting disorderly behavior." As the emergency suspension order provides, the KRS 244.120 basis for the action "is independent of the first and does not rely on the Governor's Executive Orders." [R. 23-3 at 1-2.] Indeed, KRS 244.120, "standing alone, serves as ample grounds." *Id.* The Plaintiffs never address this alternate basis for the enforcement action. [*See* R. 24 at 15-18.] And Kentucky certainly possesses a legitimate interest in "regulating the types, modes, and circumstances of alcohol sales." *37712, Inc.*, 113 F.3d at 620; *see also Newport v. Iacobucci*, 479 U.S. 92, 93 (1986) (finding that states have "broad power under the Twenty-first Amendment to regulate the sale of liquor within its boundaries.").

The Plaintiffs also claim that the Defendants violated their due process rights because the enforcement "involved the singling out of Plaintiffs" because "the Defendants desired to punish Brewed and Cooperrider for their First Amendment protected speech." [R. 1 at 8-9, 11.] Thus,

the Plaintiffs argue, the Defendants unlawfully targeted the Plaintiffs like those in *Paterek v. Village of Armada* and *Brookpark Entertainment, Inc. v. Taft*. However, the Plaintiffs fail to plausibly allege that the deprivation was in response to their criticism of Governor Beshear and the cited cases are inapplicable. First, the Court will disregard the conclusory allegation that the continued enforcement was due to the Plaintiffs' speech. *See Iqbal*, 556 U.S. at 680-81. Moreover, the *Paterek* court determined that there was a genuine issue as to whether an enforcement was arbitrary because the defendant "admitted to handling [the plaintiff] in a different manner than other business owners," one defendant's assertions "strain[ed] credulity," and the municipal defendant "failed to offer any explanation of its attempt to prosecute" the plaintiff. 801 F.3d 630, 649 (6th Cir. 2015). In *Brookpark Entertainment*, the court held that a state statute facially violated the due process clause because "it allow[ed] the voters to permanently close only those establishments that they dislike," raising the concern that the voters would "drive out of business a seller of liquor whom they disliked for reasons unrelated to any plausible public interest." 951 F.2d 710, 717 (6th Cir. 1991). Thus, both decisions involved actions that were unrelated to a legitimate government interest. In contrast, the Defendants here possessed a "conceivable legitimate governmental interest" for the enforcement: KRS 244.120 and preventing disorderly behavior related to an establishment with an alcohol license. *See 37712, Inc.*, 113 F.3d at 620. Therefore, the Plaintiffs fail to raise a plausible claim that the enforcement is arbitrary and capricious. *See id.*

**III**

In March 2020, the Plaintiffs began criticizing Governor Beshear. [R. 1 at 4.] Two years later, the Department of Alcoholic Beverage Control revoked Bewed's license. *Id.* at 9. The Plaintiffs complain that the revocation was retaliatory and contrary to state law. However, the

Plaintiffs plausibly alleged neither that continuing the enforcement was retaliatory nor that their criticism caused the Defendants to take action. Moreover, even if the change in state law prohibited an enforcement based on Governor Beshear's executive orders, the enforcement against Brewed stood on grounds that furthered a legitimate interest and were independent of an executive order. Therefore, the Defendants are entitled to qualified immunity for monetary relief against them in their individual capacities and dismissal of the claims otherwise surviving the Defendants' immunities.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Ray Perry's motion to dismiss [**R. 7**] is **GRANTED**;
2. Defendant Andrew Beshear's motion to dismiss [**R. 8**] is **GRANTED**;
3. Plaintiffs' claims against Wesley Duke in his official capacity are considered **ABANDONED**;
4. Defendant Wesley Duke's motion to dismiss [**R. 9**] is **GRANTED** in part and **DENIED** in part as follows:
    a. Defendant Wesley Duke's motion to dismiss is **GRANTED** as to the Plaintiffs' claims against him in his individual capacity;
    b. Defendant Wesley Duke's motion to dismiss is **DENIED AS MOOT** as to the Plaintiffs' claims against him in his official capacity; and
5. Defendant Joshua Newton's motion to dismiss [**R. 23**] is **GRANTED**.

This the 22d day of March, 2023.

Gregory F. Van Tatenhove
United States District Judge