UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| ANDREW COOPERRIDER, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) Civil No. 3:22-cv-00016-GFVT ) |
| v. | ) ) **MEMORANDUM OPINION** |
| MAGGIE WOODS, *et al.*, | ) **&** ) **ORDER** |
| Defendants. | ) ) ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In 2020, Mr. Cooperrider and his coffee shop, "Brewed," began criticizing Governor Beshear online. In 2022, the Department of Alcoholic Beverage Control revoked Brewed's alcohol license. Mr. Cooperrider and Brewed aver that the revocation violated the United States Constitution. This Court previously dismissed Mr. Cooperrider and Brewed's claims against Governor Beshear, Secretary Perry, General Counsel Duke, and General Counsel Newton. [R. 26.] Now, Defendants Maggie Woods and Allyson Taylor ask this Court to dismiss the claims against them on similar grounds. [R. 27.] For the reasons stated here and in the Court's prior Memorandum Opinion and Order [R. 26], Defendants' Motion to Dismiss **[R. 27]** is **GRANTED.**

# I

Mr. Cooperrider is a Kentucky resident and the sole member of Brewed, a coffee shop that served alcohol.[1]  [R. 1 at 2–3.]  In March 2020, Mr. Cooperrider and Brewed began making critical posts about Governor Beshear on social media.  *Id.* at 4.  By November 2020, the Plaintiffs had created a series of posts condemning Governor Beshear's COVID-19-related executive orders.  *Id.*  According to Plaintiffs, Governor Beshear knew of and publicly expressed anger about these critical posts.  *Id.* at 4.

In November 2020, the Department of Alcoholic Beverage Control (ABC) initiated an enforcement action against Brewed.  *Id.* at 5.  The action rested on two grounds: violation of Governor Beshear's COVID-19 executive orders, and disorderly conduct.  *Id.*; [R. 26 at 2.]  "Not to be outdone, Plaintiff Cooperrider [subsequently] led a citizen effort to seek the impeachment of Governor Beshear[.]"  [R. 1 at 5.]

Then, in early 2021, the state legislature passed several new laws.  One piece of legislation ended Governor Beshear's COVID-19-related executive orders.  *Id.* at 5–6.  Another provided that businesses may remain open so long as they adopt an acceptable operating plan.  *Id.*  Further, the legislature instructed that no state funds or state employee time valued over $10,000 shall be expended to implement or enforce any unauthorized executive order.  *Id.* at 7.  That Bill also required that future executive orders comply with certain reporting obligations.  *Id.*

---

[1] The following recitation of the facts in this case is taken from the Plaintiff's Complaint [R. 1] and from this Court's prior Memorandum Opinion and Order.  [R. 26.]  At the Motion to Dismiss stage, the Court presumes the truth of Plaintiffs' allegations while making reasonable inferences in the Plaintiffs' favor.  *See ZMC Pharmacy, L.L.C. v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (E.D. Mich. 2018) ("It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence.") (internal citation omitted).

In May 2021, the Department of Alcoholic Beverage Control held a hearing regarding Brewed's enforcement action. *Id.* at 8. Afterward, Governor Beshear, Secretary Perry, and Mr. Duke allegedly refused to offer the Plaintiffs an opportunity to settle the matter, in spite of the fact that ABC often settled other similar enforcement actions. *Id.* Then, in March 2022, ABC held a final revocation hearing for Brewed's alcohol license. *Id.* at 9. There, Beshear, Perry, and Duke allegedly directed the ABC to revoke Brewed's alcohol license, contrary to the hearing officer's recommendation. *Id.*

Mr. Cooperrider and Brewed brought this action against Governor Beshear, Protection Cabinet Secretary Perry, ABC Commissioner Taylor, ABC Administrator Woods, ABC General Counsel Newton, and Cabinet for Health and Family Services General Counsel Duke. *Id.* at 3. By prior Order, the Court dismissed Plaintiffs' claims against Defendants Beshear, Perry, Duke, and Newton. [R. 26.] Now, Woods and Taylor are the only remaining Defendants in this action.

The Plaintiffs seek injunctive, declaratory, and monetary relief against Defendants Woods and Taylor in their individual and official capacities. *Id.* at 9–11. They allege that the Defendants violated the First and Fourteenth Amendments by continuing the enforcement action after the legislature ended or restricted enforcement for executive orders. *Id.* Now, Defendants Woods and Taylor ask the Court to dismiss the action on the grounds of immunity and failure to state a claim. [R. 27.]

II

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. A motion to dismiss under Rule 12(b)(1) challenges the Court's power to hear the case before it. When jurisdiction is challenged under this rule, the

3

burden is on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Further, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

First, Defendants Woods and Taylor assert immunity from suit.[2] [R. 27.] Eleventh Amendment sovereign immunity typically protects government officials from suit in their official capacities. Further, absolute immunity can insulate state actors from claims in their individual capacities.

### A

Defendants Woods and Taylor correctly assert Eleventh Amendment immunity with respect to the First Amendment and procedural Due Process claims. But as for the substantive

---

[2] The Plaintiffs request oral argument in their response to Defendants' Motion to Dismiss. [R. 30.] The Court will deny the request as oral argument is not necessary to resolve Defendants' Motion.

Due Process claim, their sovereign immunity argument is inapposite.

### 1

The Eleventh Amendment bars suits against states and their agencies in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). A suit against a state actor in her official capacity is considered a suit against that employee's office for purposes of immunity. *Knight*, 532 F.3d at 572. Eleventh Amendment immunity offers broad protection: states and their agencies are immune under the Eleventh Amendment against all claims, "whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).

There are three exceptions to Eleventh Amendment immunity. First, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers. *See Alden v. Maine*, 527 U.S. 706, 756 (1999). Second, a state may waive its immunity. *See Sossamon v. Texas*, 563 U.S. 277, 284–85 (2011). Third, under *Ex Parte Young*, officials who are violating or threatening to violate the Constitution "may be enjoined by a Federal court of equity from such action." 209 U.S. 123, 156 (1908). The *Ex Parte Young* exception applies only when two conditions are met. First, the plaintiff's suit "must seek prospective relief to end a continuing violation of federal law." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002). Second, the state officials must have "some connection" to that ongoing violation. *Ex Parte Young*, 209 U.S. at 157–59. Courts assessing *Ex Parte Young*'s applicability perform a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 636 (2002) (alteration in original) (citation omitted).

**2**

Defendants Woods and Taylor enjoy immunity with respect to Plaintiffs' procedural Due Process and First Amendment claims. As to those claims, none of the exceptions to Eleventh Amendment immunity apply. Plaintiffs do not assert abrogation or waiver. Nor does *Ex Parte Young* apply. As the Court detailed in its prior Order, Plaintiffs fail to "allege an ongoing violation of the First Amendment or procedural Due Process" because "the enforcement action is complete and Brewed's alcohol license is revoked." [R. 26 at 6.] *See, e.g., Autry v. Johnson*, No. 3:04CV-587-H, 2005 WL 1830358, at *2 (W.D. Ky. July 29, 2005) (holding that a "discrete act of First Amendment retaliation" does not allege an "ongoing violation"); *Mich. Interlock, L.L.C. v. Alcohol Detection Sys., L.L.C.*, 360 F. Supp. 3d 671, 677-78 (E.D. Mich. 2018) (finding no ongoing violation of federal law after the plaintiffs "were deprived of their [Due Process] rights" but did not allege "future procedural [D]ue [P]rocess violations"). Accordingly, Defendants Woods and Taylor enjoy Eleventh Amendment immunity with respect to those official capacity claims.

**3**

However, as the Court explained previously, the Plaintiffs allege an ongoing substantive Due Process violation. [*See* R. 26 at 7.] When government officials "unconstitutionally retain possession of a person's identifiable property," a violation is ongoing. *Mikel v. Quin*, 58 F.4th 252, 257 (6th Cir. 2023); *see also Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417–18 (6th Cir. 2019). Plaintiffs seek injunctive relief to prevent what they characterize as the "further unconstitutional" deprivation of their alcohol license. [R. 1 at 12; R. 26 at 7.] Because Brewed *continues* to lack its license, Plaintiffs allege an ongoing violation of federal law. Additionally, the injunctive relief sought is prospective. Hence, the Court finds that

*Ex Parte Young* applies with respect to the substantive Due Process claim.

Accordingly, Plaintiffs' First Amendment and procedural Due Process claims are dismissed as to Defendants Taylor and Woods in their official capacities. Now, Plaintiffs' official capacity claims against Defendants Taylor and Woods remain only to the extent they seek prospective relief for an ongoing substantive Due Process violation.

**B**

But those claims may not proceed until the Court addresses the individual capacity request for equitable relief. Plaintiffs assert identical claims for injunctive, declaratory, and monetary relief against Taylor and Woods in their individual capacities. But as the Court laid out in its prior Order, "a plaintiff cannot 'sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job[.]'" [R. 26 at 9 (quoting *Cmty. Mental Health Servs. of Belmont, Harrison, & Monroe Cntys. v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 F. App'x 389, 401 (6th Cir. 2005).]

Plaintiffs seek a declaration that Defendants Woods and Taylor unlawfully deprived Brewed of its license. [R. 1 at 11.] They also request an injunction reinstating that license. *Id.* at 12. Moreover, the requested equitable relief concerns Woods and Taylors' official duties and "would only be useful" if it were "transferred to [Woods and Taylor's] successor[s]"; as such, Plaintiffs' individual capacity claims for declaratory and injunctive relief are indistinguishable from the official capacity claims. *Cmty. Mental Health Servs. of Belmont, Harrison, & Monroe Cntys.*, 150 F. App'x at 401. Thus, the individual capacity claims for equitable relief will be dismissed. Now, Plaintiff's claims "remain only to the extent that they are for monetary relief against [Taylor and Woods] in their individual capacities or for prospective equitable relief for

the Plaintiffs' substantive [D]ue [P]rocess claim." [R. 26 at 10.]

**C**

First, the Court addresses the individual capacity claims. Defendants Taylor and Woods ask the Court to dismiss the individual capacity claims on the grounds of absolute immunity. [R. 27-1 at 6–7.] Defendants are correct.

**1**

Prosecutors sued in their individual capacities for monetary damages are absolutely immune from a suit arising out of their job duties. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This immunity is premised upon a "'concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Id.* at 423. Consistent with this justification, absolute prosecutorial immunity extends to government attorneys "functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings[.]" *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000). Hence, "officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." *Butz v. Economou*, 438 U.S. 478, 516 (1978).

As this Court explained previously, determining whether an official is entitled to absolute immunity requires a functional approach. [R. 26 at 11.] Moreover, courts look to the "nature of the function performed, not the identity of the actor who performed it." *Cooper*, 203 F.3d at 944 (internal citation omitted). In assessing the nature of the function, courts ask whether the conduct at issue is "intimately associated" with the judicial process. *Imbler*, 424 U.S. at 430.

For instance, "[d]etermining to bring a prosecution against one person and not to charge others is the quintessential prosecutorial function[.]" *Bowman v. Warren Cnty. Reg'l Jail*, 89 F.3d 832 (Table) (6th Cir. 1996). Conversely, "investigative or administrative functions" are not intimately tied to the judicial process, and therefore "garner only qualified immunity." [R. 26 at 11]; *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003).

**2**

Here, the challenged conduct is intimately associated with the judicial process. Plaintiffs allege that Defendants Woods and Taylor "chose to continue their illegal enforcement against Brewed" and unlawfully "revoke[d] Brewed's alcohol license[.]" [R. 1 at 8–9.] Further, Woods and Taylor allegedly unlawfully "fail[ed] to discontinue their enforcement proceedings against Plaintiffs[.]" *Id.* at 10.

"[B]ecause the Plaintiffs allege that [Defendants Woods and Taylor were] 'responsible for the decision to initiate or continue' enforcement proceedings against Brewed, [they are] entitled to absolute immunity." [R. 26 at 11 (quoting *Butz*, 438 U.S. at 516)]; *see Coordinated Est. Servs., Inc. v. Walding*, No. 3:08-cv-0138-JAJ, 2009 WL 960942, at *3 (S.D. Iowa Apr. 7, 2009) (granting absolute immunity to a government official who allegedly "continue[d]" a "liquor license suspension or revocation proceeding against Plaintiff" even "after receiving information that those actions were [unlawful]"). "Whether [Woods and Taylor] acted with bad faith or outside the law is irrelevant." [R. 26 at 12]; *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009). Accordingly, and consistent with this Court's prior Order, Plaintiffs' individual capacity claims against Defendants Woods and Taylor are dismissed. [*See* R. 26 at 10–12.] Now, Plaintiff's official capacity substantive Due Process claim is the only remaining claim.

9

**D**

But in the end, the substantive Due Process claim will be dismissed. Indeed, this Court has already found that the Plaintiffs fail to state a substantive Due Process claim. [R. 26 at 23 ("Plaintiffs fail to raise a plausible claim that the enforcement is arbitrary and capricious.").] For the reasons detailed in this Court's prior Memorandum Opinion and Order, the Court will dismiss the substantive Due Process claim against official capacity Defendants Taylor and Woods on the grounds that it fails to state a claim. [*See* R. 26 at 21–23.]

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss **[R. 27]** is **GRANTED**;

2. Defendants Woods and Taylor are **DISMISSED** from this action;

3. All claims against all Defendants being resolved, this action is **DISMISSED** and **STRICKEN** from the Court's active docket; and

4. This Court will enter a contemporaneous **JUDGMENT.**

This the 17th day of March, 2024.

Gregory F. Van Tatenhove
United States District Judge