UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ANDREW COOPERRIDER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:22-cv-00016-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| ANDREW BESHEAR, *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

At the height of the COVID-19 pandemic, Lexington business owner Andrew Cooperrider criticized Governor Andrew Beshear's executive orders prohibiting indoor dining and drinking. The Kentucky Department of Alcoholic Beverage Control then revoked his bar's liquor license. Cooperrider filed suit against Beshear and several other individuals alleging First Amendment retaliation and due-process violations. In March 2023, this Court granted Beshear's Motion to Dismiss, finding that he enjoyed qualified immunity without reaching whether he enjoyed quasi-prosecutorial absolute immunity. The Sixth Circuit, in a February 2025 opinion, reversed this Court's prior order, reaching only the qualified-immunity argument. Within days of the Sixth Circuit's mandate, Beshear brought a renewed motion to dismiss. Beshear argues that, taking all of Cooperrider's well-pleaded complaints as true, he enjoys quasi-prosecutorial absolute immunity. Because the Court agrees that Cooperrider alleges that Beshear acted in a quasi-prosecutorial capacity, the Court **GRANTS** Beshear's renewed motion to dismiss.

**I**

The facts of this case are, by this point, well known to the Court. *See* [R. 26 at 1–3]; *see also Cooperrider v. Woods*, 127 F.4th 1019, 1024–26 (6th Cir. 2025). Plaintiff Andrew Cooperrider is a Fayette County resident and the sole member of Deans Diner, LLC, doing

business as "Brewed," a coffee shop that sells beer. [R. 1 at 2.] Cooperrider is a vocal and open political opponent of Defendant Andrew Beshear, the current Governor of Kentucky. Beginning in March 2020, Cooperrider spoke out in opposition to Beshear's actions during the COVID-19 pandemic. *Id.* at 4. Using social media, Cooperrider and Brewed spoke out against Beshear's "shuttering of restaurants and bars." *Id.* Cooperrider alleges that Beshear directly addressed Cooperrider's criticism "in a manner that expresses his anger" at Cooperrider's opinions. *Id.*

Beshear issued executive orders requiring masking indoors and prohibited indoor dining and drinking in restaurants and bars. Cooperrider supported an effort to impeach Governor Beshear. The Department of Alcoholic Beverage Control instituted an enforcement action against Brewed, seeking the revocation of its ABC license. *Id.* at 5. The enforcement began with an emergency order suspending Brewed's alcohol license and rested on two grounds: violation of Governor Beshear's executive orders relating to COVID-19 and disorderly conduct under Ky. Rev. Stat. § 244.120. *Id.*; [R. 23-3 at 1-2.] The state legislature later passed legislation curtailing Beshear's power. The legislature ended Beshear's COVID-19 executive orders and permitted businesses to remain open as long as the business adopted an operating plan. *Id.* at 5–6. Using its power of the purse, the legislature further instructed that no state funds or state employee time valued over $10,000 shall be expanded to implement or enforce any unauthorized executive order. *Id.* at 7.

In May 2021, the Department of Alcoholic Beverage Control held an enforcement action hearing regarding Brewed. *Id.* at 8. Cooperrider claims that Defendants refused settlement offers despite the fact that ABC frequently settled other similar enforcement actions. *Id.* In March 2022, the Department held a final revocation hearing for Brewed's alcohol license. *Id.* at 9. The complaint alleges that there, the Defendants directed the Department to revoke Brewed's alcohol

license, contrary to the hearing officer's recommendation. *Id.* Cooperrider then initiated this lawsuit against Governor Beshear, Public Protection Cabinet Secretary Ray Perry, ABC Commissioner Allyson Taylor, ABC Administrator Maggie Woods, ABC General Counsel Joshua Newton, and Cabinet for Health and Family Services Counsel Wesley Duke. *Id.* at 3. In a two-count complaint, the Plaintiffs allege that, by continuing the enforcement action after the legislature ended or restricted enforcement for executive orders, the Defendants retaliated against the Plaintiffs' criticism of Governor Beshear and deprived them of the alcohol license without due process of law. *Id.* at 9–11.

Thus began the procedural history of this case. Defendants Perry, Beshear, Duke, and Newton moved to dismiss all claims brought against them in both their official and personal capacities. [R. 7, 8, 9, 23]. This Court granted all four motions and terminated the case as to defendants Perry, Beshear, Duke, and Newton on March 23, 2023. [R. 26]. By this point, only defendants Woods and Taylor remained. Woods and Taylor filed a joint motion to dismiss, which this Court granted on March 19, 2024, dismissing the action in its entirety and issuing a final judgment. [Rs. 33, 34]. On April 15, 2024, Cooperrider appealed to the Sixth Circuit. [R. 35].

The Sixth Circuit announced its decision on February 7, 2025, affirming in part and reversing in part this Court's prior order. The Sixth Circuit affirmed this Court's (1) dismissal of the claims against Newton, Woods, and Taylor on the basis of qualified immunity; (2) grant of qualified immunity to Beshear, Perry, and Duke on the Plaintiffs' due process claims; and (3) dismissal of all official capacity claims. *Cooperrider*, 127 F.4th at 1044–45. But the Sixth Circuit reversed this Court's dismissal of the First Amendment retaliation claims against Beshear, Perry, and Duke on qualified-immunity grounds. *Id.* at 1045. Judge Moore, authoring the majority

3

opinion, held that "the complaint plausibly alleges that Beshear, Perry, and Duke violated Cooperrider's clearly established right to criticize the state government without retaliation." *Id.* at 1040. Applying the test for analyzing qualified immunity claims, Judge Moore concluded that Cooperrider successfully stated a First Amendment retaliation claim and that the right at issue was clearly established at the time of the alleged violation because "the law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional." *Id.* (quoting *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994)).

In the wake of the Sixth Circuit's decision, just three defendants remain: Beshear, Perry, and Duke. On March 28, 2025, Beshear filed a renewed motion to dismiss for lack of jurisdiction. [R. 39]. Plaintiffs responded timely in opposition, to which Beshear filed his reply in support. [Rs. 43, 47].

## II

Beshear, in his individual capacity, renewed his motion to dismiss the complaint pursuant to Rule 12(b)(1). Rule 12(b)(1) motions challenge the court's power to hear the case on the basis of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Further, they "come in two varieties." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). According to the Sixth Circuit,

> A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a *factual* attack, as here, no presumptive truthfulness applies to the factual allegations.

4

*Id.* (emphasis original). The plaintiff has the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). A 12(b)(1) motion to dismiss on the basis of an immunity defense constitutes a facial attack on the complaint. *Hagan v. Funk*, No. 3:24-cv-01223, 2025 U.S. Dist. LEXIS 191614, at *7 (M.D. Tenn. Sep. 29, 2025); *Carmichael v. City of Cleveland*, 881 F. Supp. 2d 833, 844 (N.D. Ohio 2012). The Court considers all of Cooperrider's allegations as true and construes them in the light most favorable to him as the nonmoving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Beshear contends that, in light of the Sixth Circuit's decision in *Cooperrider*, he enjoys absolute prosecutorial immunity. [R. 39 at 3]. The Sixth Circuit affirmed this Court's earlier decision that the three ABC officials against whom Cooperrider brought suit were entitled to absolute immunity. *Cooperrider*, 127 F.4th at 1030, 1035. This Court's March 23, 2023, decision granted Beshear's first motion to dismiss on the grounds of qualified immunity, without reaching Beshear's additional assertion of absolute immunity as to the individual-capacity First Amendment retaliation claim. [R. 26]. Beshear argues that, accepting Plaintiffs' allegations as true, his alleged direction of the  proceedings against Brewed affords him absolute immunity.

Absolute prosecutorial immunity shields prosecutors from 42 U.S.C. § 1983 liability. *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000). "A prosecutor is entitled to absolute immunity when that prosecutor acts as an advocate for the State and engages in activity that is intimately associated with the judicial phase of the  criminal process." *Price v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999) (citation modified). The Supreme Court, however, endorses a "functional approach to determine whether an official is entitled to absolute immunity." *Cooper*, 203 F.3d at 944 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The Court "looks to

5

the nature of the function performed, not the identity of the actor who performed it." *Id.* This approach focuses on whether the official's activities are intimately associated with the judicial phase of the criminal process, such as "initiating a prosecution and presenting the government's case" and "the administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." *Cooperrider*, 127 F.4th at 1028 (citing *Rieves v. Town of Smyrna*, 959 F.3d 678, 691 (6th Cir. 2020)).

Due to this functional approach, officials who are not prosecutors enjoy absolute immunity if they "perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). In *Butz v. Economou*, 438 U.S. 478, 516 (1978), the Supreme Court held that absolute prosecutorial immunity extends to administrative agency officials who "are responsible for the decision to initiate or continue a proceeding subject to agency adjudication." In *Cooperrider*, the Sixth Circuit extended absolute prosecutorial immunity to the general counsel, commissioner, and administrator of Kentucky's Department of Alcoholic Beverage Control. 127 F.4th at 1030, 1035. Courts outside of the Sixth Circuit have held that state governors enjoy absolute prosecutorial immunity in certain circumstances. *See, e.g., Sentementes v. Lamont*, No. 3:20cv1827 (MPS), 2021 U.S. Dist. LEXIS 98559, at *14 (D. Conn. May 25, 2021) ("Even if Governor Lamont had any personal involvement in Sentementes' prosecution, Lamont would be entitled to absolute immunity. Prosecutors receive absolute immunity from suit under § 1983 when they engage in advocacy conduct that is intimately associated with the judicial phase of the criminal process); *Watson v. Bush*, No. 09-cv-1871, 2010 U.S. Dist. LEXIS 38569, at *20 (N.D. Ill. Apr. 20, 2010) ("Plaintiff's claims against the Governor also are barred by the doctrine of absolute immunity, because they relate to his alleged failure to take action with regard to her assault); *Cote v. Kontos*, No. 88 C 4751, 1989 U.S. Dist.

6

LEXIS 1244, at *7–8 (N.D. Ill. Feb. 7, 1989) (absolute immunity bars suits against the governor of Illinois and New Hampshire, respectively, for their roles in issuing and executing extradition warrants).

In evaluating a claim of prosecutorial immunity, the Court "examine[s] the nature of the functions with which a particular official or class of officials has been lawfully entrusted" and "evaluate[s] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 224 (1988). The Court must ask whether Beshear was "functioning in an enforcement role and acting as [an] advocate [] for the state in initiating and prosecuting judicial proceedings." *Cooper*, 203 F.3d at 947. An official performing quasi-prosecutorial functions enjoys absolute immunity. *Salyer v. Patrick,* 874 F.2d 374, 378 (6th Cir. 1989).

The Plaintiffs argue that Beshear is not entitled to absolute quasi-prosecutorial immunity.[1] [R. 43 at 8–14]. They offer several reasons why. First, they state that the Supreme Court in *Butz* stated a "default rule," which Plaintiffs selectively quoted as "in a suit for damages arising from unconstitutional action, . . . executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer*[.]" *Id.* at 8–9 (quoting *Butz*, 438 U.S. at 507). The ellipsis does the heavy lifting in Plaintiffs' framing of their default rule because it conveniently leaves out the actual holding of the Court:

> We therefore hold that, in a suit for damages arising from unconstitutional action, ***federal*** executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer*, subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business.

---

[1] Defendants also argue that Beshear cannot prove that he meets the requirements of quasi-judicial immunity. [R. 43 at 12–13]. The Court agrees that Beshear could not meet any of the three factors announced in *Watts v. Burkhart*, 978 F.2d 269, 278 (6th Cir. 1992). Beshear does not perform a "traditional adjudicatory function" or "adjudicate disputes," nor could he claim to. *Id.* Accordingly, the Court only addresses Beshear's quasi-prosecutorial claim.

7

*Butz*, 438 U.S. at 507 (emphasis added). It is not clear to the Court that the Plaintiffs' "default rule," decided in the context of a challenge to a federal Department of Agriculture decision, has anything to say about a state governor's involvement in alcohol licensing enforcement. But accepting the Plaintiffs' position *in arguendo*, the *Butz* decision contains another default rule: "[T]hose officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts of that decision." *Id.* at 516.

At this stage, the Court must accept as true all of Plaintiffs' factual allegations. *Ritchie*, 15 F.3d at 598. The Court accepts as true that Beshear "w[as] aware of, and angered by, the social media activity of the Plaintiffs." [R. 1 at 4]. Beshear "directly addressed the speech of Plaintiffs, usually in a manner that expresses his anger at such speech." *Id.* "Defendants"—including Beshear—"instituted an enforcement action against Plaintiff, seeking the revocation of its Alcohol Licenses[.]" *Id.* at 5. "Internal emails, communications, and witnesses have confirmed that Defendant[] Beshear" deliberately continued enforcement actions against Brewed and "flagrantly chose to disregard" budgetary restrictions imposed on him by the General Assembly. *Id.* at 8. Plaintiffs allege that Beshear directed staff to not offer a settlement agreement to Brewed because he wanted to punish Brewed and Cooperrider for exercising their First Amendment rights. *Id.* at 8–9.

Plaintiffs clearly identify Beshear as someone who instituted an enforcement action against Plaintiffs and that Beshear deliberately continued enforcement actions against Brewed. As alleged by Plaintiffs, Beshear's actions would clearly constitute a "decision to initiate or continue a proceeding subject to agency adjudication." *Butz*, 438 U.S. at 516. Plaintiffs allege that Beshear directed staff to not offer Plaintiffs a settlement, which strikes the Court as

8

quintessentially quasi-prosecutorial behavior. *See Ingram v. Tenn. Dep't of Health*, No. 3:17-cv-01565, 2021 U.S. Dist. LEXIS 148840, at *42 (M.D. Tenn. Aug. 9, 2021) (citing *Romano v. Bible*, 169 F.3d 1182, 1187 (9th Cir. 1999) (approvingly citing decision that agency staff who entered into settlement negotiations with a licensee during a disciplinary proceeding enjoyed quasi-prosecutorial absolute immunity). Plaintiffs further allege that the final decision "to revoke Brewed's alcohol license . . . was done in a vindictive and retaliatory manner . . . *in accord with directives they received from Defendants Beshear*, Perry, and Duke." [R. 1 at 9] (emphasis added). In other words, Plaintiffs allege that Beshear directed government employees to revoke Brewed's license. This is a prosecutorial decision, accepting the Plaintiffs' framing that Beshear was involved in the initiation, litigation, and ultimate adjudication of this issue due to his animosity toward Plaintiffs. Construing the Plaintiffs' factual allegations as true, Beshear acted in a quasi-prosecutorial manner. Plaintiffs argue that Beshear "sought to silence anymore else brave enough to be critical of Defendants' actions." [R. 43 at 7]. There may be merit to this claim, but the caselaw is clear that quasi-prosecutorial absolute immunity applies even where the official acted with an improper motive. *Watts*, 978 F.2d at 274. Accordingly, Beshear is entitled to quasi-prosecutorial absolute immunity.

The Plaintiffs offer a final argument distinct from the question of absolute immunity. They argue that the law of the case doctrine applies, barring Beshear from raising his absolute immunity argument. [R. 43 at 13–14]. The law of the case doctrine holds that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (citation modified). Beshear argues that this doctrine does not apply because this Court did not rule on his absolute immunity defense because this Court granted him qualified immunity. [R. 47 at 6].

9

The law of the case doctrine "simply expresses common judicial practice; it does not limit the courts' power." *Castro v. United States*, 540 U.S. 375, 384 (2003). The doctrine is a recognition "that for cases to reach resolution, issues cannot be argued and reargued without end." *Edmonds v. Smith*, 922 F.3d 737, 740 (6th Cir. 2019) (citing *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). Application of this doctrine "is limited to those questions necessarily decided in the earlier appeal." *Burley*, 834 F.3d at 618 (citation modified). "The phrase 'necessarily decided' . . . describes all issues that were 'fully briefed and squarely decided' in an earlier appeal." *Id.* (quoting *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014)).

The Court has not ruled on Beshear's claim of absolute immunity, having decided in the March 22, 2023, Order that he was entitled to qualified immunity without reaching the issue of absolute immunity. Similarly, the Sixth Circuit did not review Beshear's absolute immunity claim because the issue on review involved this Court's grant of qualified immunity. *Cooperrider*, 127 F.4th at 1035 ("The district court determined that Cooperrider's individual-capacity claims against the remaining Defendants—Beshear, Perry and Duke—were barred by the doctrine of qualified immunity. We review the district court's qualified immunity determination de novo."). The issue of Beshear's absolute immunity claim was not "squarely decided" in an earlier appeal. The parties are not relitigating the Sixth Circuit's qualified immunity determination, but rather a separate defensive claim raised by Beshear in the wake of the Sixth Circuit's decision. The law of the case doctrine does not apply to Beshear's absolute immunity claim. Therefore, for the reasons articulated above, Beshear's Motion to Dismiss [R. 39] is granted.

10

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that

Defendant Beshear's Renewed Motion to Dismiss **[R. 39]** is **GRANTED**.

This 25th day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge